CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 18 2009

JOHN F. CORCORAN, CLERK
BY:
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGNIA
LYNCHBURG DIVISION

| | |
|---|---|
| BENJAMIN LUEVANO BELTRAN, ) | |
| ) | |
| Petitioner, ) | |
| ) | Criminal No. 6:07-CR-00012 |
| v. ) | Civil Action No. 6:08-CV-80119 |
| ) | |
| UNITED STATES OF AMERICA, ) | By: Michael F. Urbanski |
| ) | United States Magistrate Judge |
| Respondent. ) | |

## REPORT AND RECOMMENDATION

Petitioner Benjamin Luevano Beltran ("Beltran") brings this action under 28 U.S.C. § 2255, challenging his convictions and sentence for conspiring to distribute methamphetamine and multiple counts of possessing with intent to distribute methamphetamine. Beltran alleges that his plea was not knowing and voluntary and that his counsel, William Walker ("Walker"), provided ineffective assistance by failing to file an appeal upon Beltran's request. By Order dated June 4, 2009, the court referred this matter to the undersigned and directed that an evidentiary hearing be held to determine whether Beltran requested that Walker file an appeal. A hearing was conducted on September 15, 2009. As there is no credible evidence to indicate that Walker was requested to file an appeal or was otherwise ineffective, it is **RECOMMENDED** that this petition be **DISMISSED**.

### I.

On March 8, 2007, a grand jury sitting in the Western District of Virginia charged Beltran with conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846 and three

1

counts of possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841. Pursuant to a written plea agreement, Beltran pled guilty to all four counts. On November 15, 2007, the court sentenced Beltran to a total of 260 months incarceration. Beltran never indicated at his guilty plea hearing or his sentencing hearing his desire to appeal. Nor did he file a notice of appeal or make any request to have the clerk do so. Beltran claims he requested Walker to do so on his behalf at the conclusion of his sentencing hearing. The narrow issue before this court is whether, at the conclusion of the sentencing hearing, Beltran requested that Walker file a notice of appeal.

## II.

At the guilty plea hearing, the court questioned Walker regarding Beltran's decision to waive his right to appeal:

> THE COURT: Okay. Did he waive—go over the waivers he might have— waived his right to appeal guideline issues, did you mention that, and—
>
> MR. WALKER: Yes, sir, I did. That's in paragraph seven and eight of the plea agreement. He waives the right to appeal the sentencing guidelines issues or to collaterally attack the judgment of guilt.

Transcript of Guilty Plea Proceedings, at 13 (hereinafter Guilty Plea Tr.). The court followed up with Beltran to ensure he understood this to be the case:

> THE COURT: Mr. Beltran, you heard your attorney talk about your plea agreement. Did he say anything about it that is different from the way you understood it to be?
>
> THE DEFENDANT: No.
>
> THE COURT: Okay. You realize, of course, that you specifically waive your right to appeal sentencing guideline issues.
>
> THE DEFENDANT: Yes.

> THE COURT: And you understand that you have waived your right to file a writ of habeas corpus or something under Title 28, U.S.C., Section 2255 attacking the judgment in this case?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay. Did you—your attorney go over the agreement with you, read it to you with the interpreter present?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And did you understand it before you signed it?
>
> THE DEFENDANT: Yes.

Guilty Plea Tr., at 14–15. Indeed, paragraphs seven and eight of Beltran's plea agreement indicate the waiver of his right to appeal. Specifically, Beltran agreed that "after [his] full and fair sentencing hearing, [he would] not then appeal any sentencing guidelines factors or the Court's application [thereof]." Id. at 5. Beltran also agreed that he "knowingly and voluntarily waiv[ed] any right to appeal sentencing guidelines factors." Id. Beltran initialed this page of the plea agreement, and signed the last page.

There is no indication that Beltran requested an appeal at or before his sentencing hearing. At the conclusion of the sentencing hearing, the court informed Beltran of his appeal rights. See Transcript of Sentencing Proceedings, at 68–69 (hereinafter Sentencing Tr.). The court's language was clear:

> You have waived your right to appeal your sentence. And that waiver is binding unless the sentence exceeds the statutory maximum or is based on a constitutionally impermissible factor. And if you undertake to appeal despite your waiver, you may lose the benefits of your plea agreement.
>
> If a right of appeal does exist, a person unable to pay the cost of an appeal may apply for leave to appeal without prepayment of such cost. Any notice of appeal must be filed within 10 days of a notice of appeal by the government. If requested, the clerk will prepare and file a notice of appeal on behalf of the defendant.

3

Id. Beltran made no attempt to contact the clerk, as the court instructed was his right.

At the September 15, 2009 evidentiary hearing, Beltran argued that he informed Walker after the sentencing hearing of his desire to appeal the sentence. Transcript of Evidentiary Hearing, at 3 (hereinafter Evid. Tr.). The court questioned the defendant directly about this point:

> [THE COURT]: So after Judge Moon sentenced you, you told [Walker] you wanted to appeal?
>
> [BELTRAN]: Yes. Yes.
>
> THE COURT: Was this in the courtroom?
>
> [BELTRAN]: Yes.
>
> THE COURT: Was your attorney's response translated by the interpreter?
>
> [BELTRAN]: Yes. He said that I couldn't anymore because I had already signed and he said he didn't want to do the appeal.

Id. at 8. To the contrary, Walker testified that Beltran never directly or indirectly indicated that he wished to note an appeal. Id. at 16–17.

While Beltran and Walker disagree as to whether Beltran directed Walker to file an appeal, the undersigned finds Beltran's account of the facts not to be credible. His testimony at the evidentiary hearing conflicts with his testimony at his plea and sentencing hearings and it conflicts with Walker's testimony. Ultimately, the undersigned finds that Beltran never requested his attorney or the court clerk to file notice of appeal.

Beltran argues that he had difficulty understanding the interpreter when he signed the plea agreement because the interpreter spoke in a low voice:

> Q: You signed the plea agreement?
>
> A: Well, I don't know what it was. I signed a paper, but I don't know what it was.

> Q: Did you have an interpreter with you?
>
> A: Yes, there was one there, but I didn't understand him very well, but there was a man there.
>
> [Off-record discussion between the interpreter and the witness]
>
> A: Yes. The interpreter was very old.
>
> Q: What was it that you didn't understand? Was his Spanish bad?
>
> A: Yes—his Spanish was very good, but it was just that his voice was very weak and I couldn't understand everything that he said to me.
>
> Q: Okay. So did you ask him at any time to speak up for you?
>
> A: Yes.
>
> Q: Did he?
>
> A: Well, he tried to do it, but, anyway, I still didn't understand him well.

Evid. Tr., at 6–7. Furthermore, Beltran argues he had difficulty understanding the interpreter at the sentencing hearing:

> Q: You didn't understand that you could—you could contact the court about the appeal?
>
> A: No.
>
> Q: All right. Did the interpreter—could you not understand what the interpreter was saying [at the sentencing hearing]?
>
> A: Some words, no.

Evid. Tr., at 10. Notwithstanding Beltran's assertions, the record indicates Beltran never requested that the interpreter to speak louder or to clarify anything said.

5

## III.

The Sixth Amendment to the Constitution guarantees the right to counsel in judicial proceedings. Strickland v. Washington, 466 U.S. 668, 684 (1984). This right includes the right to effective assistance of counsel. Id. at 686. In order to prove one's counsel was ineffective, a defendant must show (1) the representation provided by counsel "fell below an objective standard of reasonableness," and (2) "counsel's deficient performance somehow prejudiced the defendant." Id. at 688, 694. This test applies to claims that counsel was ineffective for failing to file a notice of appeal. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000).

Failing to file a notice of appeal when directed to do so constitutes ineffective assistance. Flores-Ortega, 528 U.S. at 477. Even if not expressly requested to file an appeal, a court may find counsel ineffective for failing to *consult* with a client about an appeal under certain circumstances. Id. at 478. The Court has defined "consult" to mean "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." Id. at 471. As a constitutional matter, counsel's failure to consult with a defendant concerning an appeal is not always considered "unreasonable" or "deficient." Id. at 479. If counsel did not consult, then courts should inquire whether that attorney acted in a professionally deficient manner by failing to have such a conversation concerning the topic of appeal. Id. at 471. A two-part inquiry is necessary. Counsel has a constitutional duty to consult with a client concerning an appeal when (1) a rational defendant would want to appeal, or (2) the defendant made reasonable effort to demonstrate he had an interest in appealing. Id. at 480. Neither factor is met here.

Beltran fails to meet the first prong of the Strickland test. The evidence received at the evidentiary hearing makes it plain that Walker's representation did not fall below an objective

6

standard of reasonableness. Instead, Walker made a significant effort by way of an interpreter to review the plea agreement with Beltran in its entirety, including its waiver of appeal. Evid. Tr., at 23–24. When asked about the agreement and his understanding of the document, Beltran made it clear to the court that he understood the charges to which he was pleading guilty. Guilty Plea Tr., at 14–15. The court also addressed the waiver of appeal during the guilty plea hearing, and Beltran clearly understood he was waiving his right to appeal. Id.

Walker did not consult with Beltran after the sentencing hearing concerning the subject of appeal. The conversations regarding an appeal prior to the sentencing hearing consisted of Walker reading to Beltran the fact that he would be "waiving the right to appeal the court's decision unless it exceeds the statutory guidelines." Evid. Tr., at 29. This discussion occurred prior to Beltran's signing the plea agreement. Id. at 28–29. After that discussion, Walker did not consult with Beltran concerning his right to appeal. Id. at 28.

The fact that a rational defendant when placed in Beltran's shoes would not have appealed this sentence adds credibility to Walker's testimony that Beltran never mentioned the subject of appeal. Had Beltran proceeded to trial and been found guilty on all four counts, he would have faced a mandatory minimum sentence of thirty-five years with the possibility of life in prison. If Beltran breached his plea agreement by appealing his sentence, he would be subject to that portion of the agreement entitled "Remedies for Breach of Plea Agreement." Plea Agreement, at 8; Sentencing Tr., at 69. That paragraph states the possible consequences to Beltran for breaching the agreement:

> [I]f I breach any provision of this agreement, at any time, including any attempt to withdraw my guilty plea . . ., the United States Attorney's office may, at its election, pursue any or all of the following remedies: (a) declare this plea agreement void and proceed to trial; (b) refuse to recommend that I be credited with acceptance of responsibility; (c) seek an upward departure from the guidelines range, or seek imposition of a sentence at the high end of the

7

> guidelines range; (d) terminate my opportunity to perform substantial assistance, if such opportunity has been provided, or refuse to make a substantial assistance motion, regardless of whether substantial assistance has been performed or not; (e) withdraw any substantial assistance motion made, regardless of whether substantial assistance has been performed; (f) refuse to abide by any other sentencing or other stipulations contained in this plea agreement . . . .

Id. These consequences support the finding that a reasonable defendant would not appeal a sentence that fell within the sentencing guideline range. Beltran argues that he was ill-informed about the sentence he would receive after pleading guilty; he stated that Walker advised him he would only receive a five-year sentence. There is no evidence on the record to suggest this possibility. To the contrary, Beltran himself confirmed his understanding of the sentence to the court. Guilty Plea Tr., at 10–11; Plea Agreement, at 3.

To determine the second Flores-Ortega factor—whether the defendant made reasonable efforts to demonstrate he had an interest in appealing—courts should consider the information counsel already knew or should have known. Flores-Ortega, 528 U.S. at 480. Important to this determination is whether the conviction followed a trial or a guilty plea. A guilty plea "reduces the scope of potentially appealable issues" and "may indicate that the defendant seeks an end to judicial proceedings." Id. Courts also should scrutinize whether a plea bargain waived all or some of the defendant's appellate rights. Id.

The record establishes that Beltran did not make reasonable efforts to demonstrate his alleged interest in appealing. He orally waived his right to appeal at the guilty plea hearing. Guilty Plea Tr., at 12, 15. He signed a plea agreement waiving his appeal rights. Plea Agreement, at 5. He did not indicate to the clerk of the court his intention to appeal as Judge Moon indicated was an option. Sentencing Tr., at 69. Finally, Beltran never indicated to Walker—an "experienced, zealous advocate in this matter" well versed in appellate procedure—that Beltran desired an appeal. Sentencing Tr., at 4, 16.

8

In conclusion, there is no credible evidence to suggest Beltran ever requested Walker to file an appeal. It was Beltran's decision to accept the government's plea agreement, and after doing so, its terms and conditions were explained to him by Walker, the court, and the government. The court advised Beltran he could note an appeal, and that the clerk would assist him in this regard, yet there is no evidence that he made any such effort. Walker was not required to consult with Beltran regarding an appeal as there is no evidence to support that Beltran made any effort to demonstrate to Walker his interest in appealing his sentence. Furthermore, no rational defendant would seek an appeal given the risk of waiving the benefits of the plea agreement into which he intelligently entered. To the extent that Beltran argues he misunderstood the possible sentencing guidelines, this court finds the claim groundless. As such, Walker's representation did not fall below an objective standard of reasonableness. Beltran's claim is meritless, and it is **RECOMMENDED** that it be **DISMISSED**.

## IV.

In addition to Beltran's claim that Walker failed to note an appeal, Beltran bases his ineffective assistance of counsel claim on a second premise: Beltran alleges that his guilty plea was not knowingly and voluntarily made. The district court followed the Fourth Circuit's instructions in United States v. Killian and decided not to consider the merits of this claim until ruling on the underlying § 2255 motion. United States v. Beltran, No. 6:07cr00012-1, 2009 WL 1575528, at *1 (W.D. Va. June 4, 2009) (citing United States v. Killian, 22 Fed. App'x 300 (4th Cir. 2001)). To the extent the district court considers the merits of Beltran's second claim, the undersigned **RECOMMENDS** the claim be **DISMISSED**.

9

A guilty plea "not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." Brady v. United States, 397 U.S. 742, 748 (1970); see also FED. R. CRIM. P. 11. Beltran alleges that his plea was not voluntary and knowing because Walker promised Beltran would receive no more than a five-year sentence if Beltran pleaded guilty. Beltran's Memo Supporting § 2255 Motion, at 6. The record reflects the opposite. First, the court conducted a thorough plea colloquy that satisfied the requirements of Rule 11. Included in this colloquy were the charges and penalties, which Beltran indicated he understood. Guilty Plea Tr., at 7–11. Second, Beltran intelligently negotiated his plea agreement by accepting only after the Government removed references to cocaine from the agreement. Guilty Plea Tr., at 7. Third, Beltran received a copy of the U.S. Probation Officer's estimate that Beltran's sentence would be in the 168–262 month range. Fourth, Beltran initialed each page and signed the entirety of the plea agreement which set forth the charges and penalties to which Beltran pleaded. Three of the counts mandated ten-year minimums. Plea Agreement, at 1–2. Beltran also indicated he understood the application of the sentencing guidelines. Plea Agreement, at 3. Beltran agreed he had not been promised "anything other than the terms on [the] plea agreement." Plea Agreement, at 9. Beltran agreed that he fully understood the plea agreement and voluntarily agreed to it. Plea Agreement, at 10. Last, the court found "that [Beltran's] plea of guilty is a knowing and voluntary plea." Guilty Plea Tr., at 22.

The only evidence to support Beltran's assertion that the plea was not knowing and voluntary is his own statement that Walker promised him a five-year sentence. This assertion is contradicted by Beltran's own statements under oath in court at his guilty plea hearing. Due to this overwhelming evidence, the undersigned finds that Beltran entered the guilty plea

knowingly and voluntarily. For this reason, it is **RECOMMENDED** that the claim be **DISMISSED**.

## IIV.

The Clerk of the Court is directed immediately to transmit the record in this case to the Honorable Norman K. Moon, United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court is hereby directed to send a certified copy of this Report and Recommendation to plaintiff and counsel of record.

**ENTER:** This 17th day of November, 2009.

Michael F. Urbanski
United States Magistrate Judge